**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**MICHAEL OTIS ROBERTSON**                                          **PLAINTIFF**

**VS.**                                   **NO.  4:21-CV-01172 BRW-JJV**

**DEPUTY POWELL**                                          **DEFENDANT**

**BRIEF IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Plaintiff filed the instant case alleging constitutional injury and a right to recover from the Defendant under 42 U.S.C. § 1983 for alleged injuries he claims to have suffered during his incarceration in the Pulaski County Regional Detention Facility ("PCRDF"). Plaintiff claims that the Defendant subjected him to excessive force.

There remain no material issues of fact. Plaintiff cannot provide proof beyond bare accusations that Defendant subjected him to a deprivation of his constitutional rights. The Pulaski County Defendant is therefore entitled to summary judgment. Even taking the facts in a light most favorable to the Plaintiff, Defendant is entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented

1

from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. See *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . " *Id.* at 247-48. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Id.* at 252.

"Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)), cert. denied, 132 S. Ct. 1144, 181 L. Ed. 2d 1018 (2012).

"[S]elf-serving allegations and denials are insufficient to create a genuine issue of material fact." *Anuforo v. Comm'r*, 614 F.3d 799, 807 (8th Cir. 2010). "To survive a motion for summary judgment, the nonmoving party must substantiate [its] allegations with sufficient probative

2

evidence [that] would permit a finding in [its] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)) (internal quotation marks omitted).

### III.    ARGUMENT

**A.    Plaintiff was not subjected to excessive force.**

Plaintiff alleges that he was subjected to excessive force during his incarceration within the Pulaski County Regional Detention Facility on October 30, 2021. Plaintiff alleges:

> This is the God honest truth I Michael O. Robertson got jumped on by B. Powell Oct. 30, 2021 I was ask for the nurse early morning 5:00 a.m. breakfast time. I put my arm out the trap, that is when B. Powell said you ain't going to do me like that he thin starts hitting me with has flash light he through about what he was doing thin he start spring me with mess he did not call a code or nothing I wrote a paper grievance. That was cruel unusually punishment…" [sic] Doc. No. 2, page 4-5.

In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979)("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against objectively unreasonable use of force, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. *Graham v. Connor*, 490 U.S. 386, 394 (U.S. 1989) (citing *Whitley v. Albers*, 475 U.S. 312, 318-326 (1986)).

On September 6, 2020, at the time of Plaintiff's arrest and detention in the Pulaski County Regional Detention Facility, Plaintiff faced an allegation of a violation of his probation. See

Statement of Indisputable Material Facts, Exhibit A1, Arrest and Booking, page 4-5. Plaintiff was, therefore, a convicted person. Because "[h]is original conviction is the authority under which he was confined after his parole violation," he must be treated as a convicted person for purposes of considering his excessive force claim. See *Dodd v. Latimore*, 2018 WL 4346686 at *1 (E.D.Ark. Aug. 30, 2018), quoting *Washington v. Byrd*, 2012 WL 925148 at *3 (E.D. Ark. March 16, 2012); see also, *Moore v. Shock*, 2014 WL 5474613 (E.D. Ark. Oct. 29, 2014). See also *Flores v. Mesenbourg*, (a parolee awaiting a revocation hearing must rely on the Eighth Amendment to support his claim because "his original conviction is the authority under which he was confined after his parole violation.") 1997 WL 303277 (9th Cir. June 2, 1997) (unpublished opinion).

"[T]he Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences." *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)). "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers regardless of whether an inmate suffers serious injury as a result." *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citations omitted). The Supreme Court has held that when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. The Eighth Circuit has explained that [t]his inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be

4

drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley*, 475 U.S. at 321). "[T]he subjective motivations of the individual officers are of central importance in deciding whether force [was] used maliciously and sadistically to cause harm in violation of the Eighth Amendment." *Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014) (quotation omitted).

Here, although Plaintiff alleges within his Complaint that the incident at issue within this occurred on October 30, 2021, PCRDF records show that incident occurred a year prior, on October 30, 2020. See Statement of Indisputable Material Facts, Exhibit A4, Incident Reports, page 39. The issue at hand began when Plaintiff stuck his arm out of his cell's food port when Deputy Powell opened the food port to serve Plaintiff breakfast. Plaintiff refused multiple verbal orders from Deputy Powell to put his arm back inside the food port. Plaintiff then threw his opened milk and breakfast tray through the food port, causing both to splatter on the Unit's floor and creating a hazard for PCRDF personnel and other inmates. As Plaintiff still refused to put his arm through the food port, Deputy Powell attempted to de-escalate the situation by walking away from Plaintiff's cell and finishing breakfast service within the Unit. However, Deputy Powell observed Plaintiff sticking pencils in the locking mechanism of his food port to disable it. It was necessary for Deputy Powell to prevent Plaintiff from disabling the food port's locking mechanism and to secure Plaintiff's food port closed, as Plaintiff had previously thrown feces and other substances through his food port, creating a safety and security risk to PCRDF personnel and other inmates. When Deputy Powell attempted to take the pencils from Plaintiff, Plaintiff refused orders and resisted, and then attempted to punch Deputy Powell and grabbed Deputy Powell's wrist, digging

his nails into it. Deputy Powell raised his flashlight, at which point Plaintiff released Deputy

Powell's wrist. It was necessary for Deputy Powell to use minimal hands-on contact to secure

Plaintiff's food port to terminate the ongoing safety risk that Plaintiff created by throwing feces,

bodily fluids, and food and beverages through his food port.

On October 30, 2020, Deputy Brady Powell completed an incident report, stating:

"At 0520 hours during feeding. [sic] I lowered the trap of cell T-319 which houses Inmate
Robertson, Michael (#09919-20) to feed him. I knew that Inmate Robertson likes to hang
his arm out the trap so I held the trap while he was grabbing the tray. Inmate Robertson
was quick so I was unable to secure the trap. Inmate Robertson began to hang his arm out
[sic] the trap [sic] claimed that "you poisoned me. You put poison in my tray." I informed
Inmate Robertson that I did not poison him and that he had not even eaten his tray. Inmate
Robertson then threw his milk on the ground outside his cell causing milk to splatter all
over the floor. I told Inmate Robertson that I would be writing him up. Inmate Robertson
then requested a sergeant. I told Inmate Robertson that I would not call for a sergeant
because one was not needed in the matter. Inmate Robertson then threw his tray containing
all of his food out of the trap onto the main floor causing it to also go everywhere. Inmate
Robertson then stated "Deputy Powell threw my food all of the floor. You better get a
fucking Sergeant. You did not feed me. You threw my food on the ground. I am going to
write a grievance on you. I am going to sue you and the jail for this" I then continued with
feeding the other Inmate and left Inmate Robertson with his arm hanging out of his assigned
cell trap. Once I got to the last cell in the row T-322, I noticed that Inmate Robertson was
attempting to stick broken pieces of pencils in the trap key hold which would prevent the
trap from being secured. I walked over and was able to retrieve the pieces of pencil from
Inmate Robertson's hand. Inmate Robertson then started to scream "You just attacked me.
You twisted my wrist. I am suing you and the jail." Inmate Robertson then made a noise
that sounded like he was drawing spit into his mouth. I asked  Inmate Robertson if he was
going to spit on me to which he replied "is your body camera on?" I informed Inmate
Robertson that the body camera was in fact on and he replied that "well then no I am not
going to spit on you!" Inmate Robertson then repeated attempted [sic] to put more pencils
in the keyhole while I was standing there. While attempting to take another pencil from
Inmate Robertson's lefthand, he swung at me through the trap with his right hand. Inmate
Robertson then began to scream "Deputy Powell attacked me. Deputy Powell Just tried the
[sic] swing at me. Inmate Robertson then attempted to again put another pencil in the
keyhole. While I was grabbing the pencil from Inmate Robertson's hand he grabbed my
right wrist and squeezed down on it digging his nails into my wrist. I withdrew my
flashlight from its holster in an attempt to dislodge Inmate Robertson's hand from my wrist.
Upon seeing this, Inmate Robertson leg go of my wrist claiming "I got you now. I am going
to have yo [sic]job and everything else. I am going to sue you and the jail for 100 million
dollars. I am going to make some money today." Inmate Robertson then tried a couple
more times to stick shards of pencils n the lock. I was advised by T-Booth to continue
feeding the rest of the inmates on the upper level. While feeding the upper level Sergeant

Foley came into the unit and talked to Inmate Robertson. I could hear Inmate Robertson tell Sergeant Foley that I drew my flashlight and tried to attack him for no reason. After Sergeant Foley walked away from Inmate Robertson's assigned cell door.[sic] Inmate Robertson pulled his assigned call door trap closed., but not secured. I informed Sergeant Foley look; he pulled his trap closed." I asked Sergeant Foley to secure the trap after everything that just went down. I noticed that my wrist has a nail mark embedded in my skin from where Inmate Robertson grabbed me. Lieutenant Allen and Sergeant Foley came back to the unit and asked if I wanted to go to the hospital to get checked out to which I refused medical attention stating [sic] "I am fine, he did not break the skin or draw blood." I am requesting disciplinary charges be filed against Inmate Robertson."

See Statement of Indisputable Material Facts, Exhibit A4, Incident Reports, page 39.

Here, Plaintiff disrupted the order of the facility and refused to comply with Deputy Powell's lawful orders to put his arm back within his cell after receiving his breakfast tray. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Deputy Powell. At his deposition, Plaintiff admitted that he was not supposed to have his arm out of his food port. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 50:14-23. Plaintiff testified that he put his arm out of the food port in an attempt to force Deputy Powell to call a Sergeant. *Id.* It is clear from Plaintiff's testimony that his actions constituted a refusal to obey lawful orders and were a deliberate attempt to manipulate PCRDF personnel to do what he wanted. Rather than following orders from PCRDF personnel, Plaintiff acted out in an effort to force Deputy Powell to call medical personnel or a Sergeant, in accordance with Plaintiff's wishes.

It was necessary for Deputy Powell to secure Plaintiff's food port, as Plaintiff had previously thrown substances through his food port, including feces. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Deputy Powell; Exhibit A4, Incident Reports, page 24. Plaintiff testified that a couple of days prior to the October 30, 2020 incident at issue in this lawsuit, he had thrown feces at a woman through his food port. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 47:19-48:4. Plaintiff testified that Deputy Powell knew that he had thrown feces through the food port a few days prior to this incident. See

Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 53:6-10. Further, Plaintiff admitted that Deputy Powell would not have known whether he had feces in his cell ready to throw through the food port during the incident at issue in this lawsuit. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 52:18-24.

As Plaintiff still refused to put his arm through the food port, Deputy Powell attempted to de-escalate the situation by walking away from Plaintiff's cell and continuing breakfast service within the Unit. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Deputy Powell. Plaintiff testified that Deputy Powell walked away from his cell for some period of time. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 56:20-24. Plaintiff testified that he was attempting to stuff the food port's locking mechanism with pencils. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 50:20-51:12. Plaintiff testified that inmates were not allowed to do so, and that he was wrong for trying to stuff the trap. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 51:16-25, 57:12-25.

When Deputy Powell observed Plaintiff lodging broken pencil pieces in his food port's locking mechanism, Deputy Powell returned to Plaintiff's cell and attempted to take the pencils from Plaintiff and move Plaintiff's hands back inside of his cell. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Deputy Powell. Plaintiff testified that he put his right hand back in his cell, but then quickly switched to put his left hand through the food port, thereby continuing the situation at hand. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 58:18-59:9. Plaintiff punched at Deputy Powell through the food port, and grabbed Deputy Powell's wrist, digging his nails into it. See Statement of

Indisputable Material Facts, Exhibit C, Affidavit of Deputy Powell. Deputy Powell raised his flashlight, at which point Plaintiff released Deputy Powell's wrist, and put his hands back inside the food port. *Id.* Deputy Powell's flashlight did not make physical contact with Plaintiff. *Id.*

Deputy Powell was unable to secure Plaintiff's food port due to the pieces of pencil lodged in the locking mechanism. See Statement of Indisputable Material Facts, Exhibit C, Affidavit of Deputy Brady Powell. At this time, Deputy Powell walked away for the second time and a Sergeant was called to assist. *Id.* The need to maintain safety and security within PCRDF is a legitimate penological interest, and an inmate that throws substances through his food port and attempts to physically harm a deputy creates a substantial safety risk. *Id.* Therefore, Deputy Powell acted reasonably under the circumstances to prevent Plaintiff from disabling the lock on his food port and from harming him.

PCRDF Defendant Deputy Powell followed his training. Pulaski County Regional Detention Facility personnel are trained in the lawful use of force. PCRDF follows the standard Use of Force Continuum by which a deputy is trained to use the option that represents the minimal amount of force necessary to reduce the immediate threat presented by the actions of the subject. According to the Use of Force Continuum, when the subject is obedient, compliant, and non-aggressive, the officer should not use force. When the subject is resisting and non-compliant, the officer may use a moderate or limited amount of force such as physical control with his/her hands. Here, Deputy Powell believed that it was imperative to close and lock Plaintiff's food port, as Plaintiff had previously thrown feces, food, and other substances through his food port, creating a safety risk to PCRDF personnel and other inmates. Due to Plaintiff's non-compliance, resistance, and aggression, Defendant Powell used minimal hands-on contact to prevent Plaintiff from disabling his food port's locking mechanism. Use of hands/physical touch in this manner is

considered "limited force" on the use of force continuum. Such limited force is appropriate when the subject is non-compliant. There is no evidence that Deputy Powell maliciously or sadistically used force. Deputy Powell did not use force to cause harm, but only used the minimal force necessary to secure Plaintiff's food port. It was necessary for Deputy Powell to use limited force to restore order in the facility and to protect himself and others from Plaintiff.

Finally, Plaintiff has not shown that he suffered any physical injury. While the evidence of only a *de minimus* injury is not necessarily dispositive on the issue, see *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011), the degree of injury is certainly relevant insofar as it tends to show the amount and type of force used. *Id. See also Cook v. City of Bella Villa,* 582 F.3d 840, 850 (8th Cir.2009); *Cavataio v. City of Bella Villa,* 570 F.3d 1015, 1020 (8th Cir.2009); *Curd v. City Court,* 141 F.3d 839, 841 (8th Cir.1998); *Greiner v. City of Champlin,* 27 F.3d 1346, 1355 (8th Cir.1994); *Foster v. Metro. Airports Comm'n,* 914 F.2d 1076, 1082 (8th Cir.1990). Robertson's *de minimus* injury, if any injury at all, is further evidence that the limited force used by Defendants was reasonable in light of the circumstances with which they were presented.

Plaintiff had only *de minimus* injury, if any injury at all, from the alleged excessive force incident. Plaintiff has failed to prove that the alleged excessive force incident caused him any injury. After the October 30, 2020 incident at issue in this lawsuit, Plaintiff did not submit any medical requests stating Deputy Powell used O.C. spray, or that he suffered any injuries or needed any medical treatment due to O.C. spray. See Statement of Indisputable Material Facts, Exhibit A3, Jail Medical File Information, page 139-142. Plaintiff testified that his hand was originally injured in September 2020, and the incident at issue in this lawsuit made his hand hurt worse. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 66:25-67:5. Plaintiff testified that medical personnel continued to give him the same medication for his

hand injury. *Id.* at 66:7-10. Plaintiff did not submit any medical requests stating that Deputy Powell injured his hand on October 30, 2020. See Statement of Indisputable Material Facts, Exhibit A2, Requests and Grievances, page 156-185.

Further, Plaintiff was involved in another use of force incident occurring on November 1, 2020, after which Plaintiff complained of hand, back, and neck pain. See Statement of Indisputable Material Facts, Exhibit A3, Jail Medical File Information, page 136-137; See Exhibit A2, Requests and Grievances, page 156-185. Plaintiff's medical requests after November 1, 2020 complain of his injuries from the November 1, 2020 incident, rather than the October 30, 2020 incident at issue within the instant lawsuit involving Deputy Powell. Plaintiff was provided with medication, an ace wrap, and a cold pack for his purported hand injury after the November 1, 2020 use of force incident that is not at issue in the instant lawsuit. See Statement of Indisputable Material Facts, Exhibit A2, Requests and Grievances, page 172. On December 22, 2020, PCRDF medical personnel noted: "The doctor has seen you three times about your hand. Xrays have been done and show no abnormalities. The doctor has ordered you a wrist brace, but it has not arrived yet…" See Statement of Indisputable Material Facts, Exhibit A2, Requests and Grievances, page 179. PCRDF medical personnel did not indicate any objective findings regarding Plaintiff's purported hand injury. Further, Plaintiff testified that he did not seek any treatment for his injuries after he was released from PCRDF in January 2021. See Statement of Indisputable Material Facts, Exhibit B, Deposition of Michael Robertson, page 66:11-15. Plaintiff has failed to meet his burden of proving medical causation. Plaintiff must meet proof with proof, and Plaintiff has failed to establish a prima facie case. The Pulaski County Defendant is entitled to judgment as a matter of law.

**B.    The Pulaski County Defendant is entitled to qualified immunity.**

"In a § 1983 action, state actors may be entitled to qualified immunity." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir.2009) (citation omitted). Qualified immunity may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir.2005).

Qualified Immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), *Brown v. Nix*, 33 F.3d 951, 953 (8th Cir. 1994). Qualified immunity is designed to "protect officials from the disruptions of going to trial as well as from liability for money damages. . . [i]t is important for public officials to be shielded from the burden of trial on insubstantial claims." *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 202-03 (8th Cir. 1986). Accordingly, the Court generally should rule upon the defense "at the earliest possible time." *Id.*

In deciding the qualified immunity question, the court should "ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable or more reasonable interpretation of the events can be constructed ...." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity is an objective one. *Id.* Officials should not have to always err on the side of caution out of a fear of being sued. *Id.* at 229. Qualified immunity

12

"provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335 (1986).

In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the U.S. Supreme Court held that there are two prongs to a qualified immunity analysis. A court must consider both whether a constitutional right has been violated and whether that right had been clearly established at the time of the alleged violation. The Court held in *Pearson*, that, while often appropriate, is not mandatory to consider these issues in any particular sequence. Under *Pearson*, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818 (overruling, in part, in *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In this case, the Plaintiff has failed to prove a constitutional violation by the Pulaski County Defendant. Therefore, the Pulaski County Defendant is entitled to the protections of qualified immunity.

**C.     There is no unconstitutional policy implemented by Defendant that violated Plaintiff's rights, and therefore no basis for official capacity/county liability.**

Plaintiff filed this lawsuit against the Pulaski County Defendant in his personal and official capacities. Plaintiff alleges:

> This is the God honest truth I Michael O. Robertson got jumped on by B. Powell Oct. 30, 2021 I was ask for the nurse early morning 5:00 a.m. breakfast time. I put my arm out the trap, that is when B. Powell said you ain't going to do me like that he thin starts hitting me with has flash light he through about what he was doing thin he start spring me with mess he did not call a code or nothing I wrote a paper grievance. That was cruel unusually punishment…[sic] Doc. No. 2, page 4-5.

Here, Plaintiff has not alleged any specific policy, practice, or custom that violated his constitutional rights. In addition, it is the policy of PCRDF that deputies will use the minimum amount of non-deadly force necessary to maintain the security and control of inmates.

A county is liable only for constitutional violations caused by the local government's "official policy." Official policy includes written policy, custom (unwritten policy), and the conduct of a policymaker. In *Monell v. Department of Social Services*, 436 U.S. 658 (1978) the Supreme Court concluded that local governments may not be held vicariously liable for the conduct of officials and employees of the local government, rejecting respondeat superior as a basis for imposing liability on a county. The *Monell* decision states that a county or other local government is liable under § 1983 only when "execution of a government policy or custom . . . inflicts the injury." *Monell* at 694. Subsequent cases have established that "official policy or custom" can be established by: (1) written rules created by the local government; (2) the customary practices of the local government; or (3) conduct of the local government's "policy makers." There can be a chain of causation leading from the person who engaged in the unconstitutional act back to the "official policy" being implemented by the act. *Pembaur v. City of Cincinnati*, 106 S.Ct. 1292, 1299-1300 (1986). Absent a written policy to the contrary, the "official policy" of a local government will be the conduct of its officials and employees, subjecting the local government to civil rights liability, without any immunity, for the unconstitutional conduct of its officials and employees. Absent exercise of the "final authority" given by law to the local government's elected officials, the local government's employees may be construed to be the "policy makers," subjecting the local government to civil rights liability, without any immunity, for an employee's unconstitutional conduct.

Plaintiff sued Defendant in his official capacity. The Pulaski County Regional Detention Facility has written policies. One such policy states: "Deputies will use the minimum amount of non-deadly force necessary to maintain the security and control of inmates and to prevent incidents from escalating into an emergency." See Statement of Indisputable Material Facts, Exhibit A6,

Policies and Procedures, page 433-443. "Under normal circumstances, only the methods and instruments listed below may be used to apply force. These methods are listed in order from the least severe to the most drastic. It is the deputy's responsibility to first exhaust every reasonable means of employing the minimum amount of force before escalating to a more severe application of force. This in no way implies a deputy must attempt each step before proceeding on to the next step. The actions of an inmate may require a deputy to start the application of force several steps up the continuum. Therefore, the path taken through the use of force continuum can be different each time. It falls on the deputy to use only that amount of force deemed to be necessary be a reasonable person to subdue the inmate.

A. Physical Presence – the mere presence of a deputy

B. Verbal Commands – request, direct or command

C. Soft, Empty Hand – low level compliance procedures, non-threatening, non-violent (minimal chance of injury)

D. Aerosol Defense Spray – when passive restraint techniques have failed and a deputy must use physical force

E. Hands on Contact – physical contact when OC spray is inappropriate or fails

F. Impact Weapon – to impede subject's actions when other force failed or is deemed inappropriate.

G. Deadly Force – to stop subject's actions as defined by the deadly force policy.

H. Each situation may require a different "path" through the force continuum.

I. In the same manner a deputy escalates up through the continuum, he/she must be able to de-escalate as each situation dictates." See Statement of Indisputable Material Facts, Exhibit A6, Policies and Procedures, page 437-438.

All of the aforementioned policies of the Pulaski County Regional Detention Facility are constitutional on their face. Plaintiff has no proof to give rise to county liability. In order to impose liability upon Pulaski County (and/or the Defendant, in his official capacity), Plaintiff must prove that county policy or custom was the "moving force" behind any alleged underlying violation. Plaintiff can offer no such proof. Instead, the proof in this case shows that Pulaski County had appropriate policies in place. Plaintiff cannot establish that the policies were the "moving force" behind the alleged deprivation of rights. See also supra discussion (no underlying constitutional violation). The Pulaski County Defendant is entitled to summary judgment.

## IV.    CONCLUSION

In *Celotex v. Catrett*, 477 U.S. 317 (1986), the seminal case on interpreting the federal summary judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." The *Celotex* Court held ultimately that the movant need not submit supporting affidavits in order to prevail if he can show from the other material on file the absence of a genuine issue of material fact. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof by showing that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress*, 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-

moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." See *Celotex* supra. It is the non-movant who must go beyond the pleadings and by affidavit, depositions or other *substantive* evidence designate specific facts showing that there is a genuine issue for trial. *Id.* (Emphasis added).

Plaintiff has failed to show a constitutional violation in this case. Plaintiff has failed to prove that he was subjected to excessive force. The Pulaski County Defendant is entitled to qualified immunity and judgment in his favor as a matter of law.

Respectfully submitted,

DEPUTY B. POWELL, in his personal and official capacities, Defendant

Melissa K. Dugger, Ark. Bar No. 2017150
Attorney for Pulaski County Defendant
ASSOCIATION OF ARKANSAS COUNTIES
RISK MANAGEMENT SERVICES
1415 W. Third Street
Little Rock, Arkansas 72201
Telephone: (501) 375-8805
Email: mdugger@arcounties.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, and I mailed the document by United States Postal Service to the following non-CM/ECF participant:

Mr. Michael Otis Robertson, Pro Se
#106563
c/o Pulaski County Jail
3201 W. Roosevelt Road
Little Rock, AR 72204

　　/s/Melissa K. Dugger
Melissa K. Dugger, Bar No. 2017150
Attorney for Pulaski County Defendant

17